- 1 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x

ANDIN INTERNATIONAL, INC.,

        Plaintiff,

    -against-

YURMAN STUDIO, INC.,

        Defendant.

---------------------------------x

YURMAN STUDIO, INC.,

        Defendant-
        Counterclaimant,

    -against-

ANDIN INTERNATIONAL, INC. and
VARDI GEM LUSTRE, LLC

        Counterclaim-
        Crossclaim Defendants.

---------------------------------x

Civil Action No. 08 cv 1159 (HB)

---

**DECLARATION OF MARILYN WILLIAMS SUBMITTED
IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

---

Marilyn Williams declares as follows:

    1.    I am the Vice President of Sales for Andin International, Inc. ("Andin").

    2.    I have worked at Andin since 1987.

    3.    Andin markets its jewelry to middle market consumers.  Middle market generally refers to that part of the population that would defined itself as "middle class"

and thinks of itself as being of average in income and education. This can include people that would define themselves as "upper middle class" or "lower middle class" – but basically covers households with annual incomes between $40,000 and $90,000. These are consumers that are seeking a good "value" for their purchases. Generally speaking, these are not consumers that have enough disposable income to spend thousands of dollars on jewelry.

4.    Given Andin's end consumers, Andin's clients are stores that sell jewelry at a discount from the manufacturer's suggested retail price.

5.    I read various trade publications as well as magazines about fashion.

6.    I have been attending jewelry industry trade shows for the last fifteen years.

7.    During the time period relevant to this case, I have been Andin's sales representative to Sam's Club and Finlay Fine Jewelry ("Finlay").

8.    I am familiar with David Yurman's name, but not with David Yurman products. Unlike Andin, which sells to middle market, David Yurman is a luxury brand, meaning that Yurman products are associated with luxury and high price. I have seen some of David Yurman's advertisements. In each advertisement that I recall, David Yurman is really selling his name and product as a status symbol, selling at very high prices.

9.    The consumers of the luxury brand jewelry are different from the middle market consumers, as the former are motivated to purchase luxury items because those items are not generally offered to the general public. It is this perceived value that drives the desire for these items and their cost. The luxury jewelry brands usually do this by offering a product line geared towards affluent consumers who make their

purchases based on the degree of exclusivity of a certain product. Examples of this would be Armani or Cartier.

10. Andin does not sell to consumers that seek luxury brand jewelry.

11. Andin does not sell to retailers that typically sell luxury brand jewelry.

12. I have never been to a Yurman store. I have never purchased a piece of Yurman jewelry. To my knowledge, Andin is not now, nor has it ever been, in possession of any Yurman jewelry.

13. To the best of my knowledge, David Yurman is known for silver designs. I am unaware of any other design elements that David Yurman is associated with.

14. As I explained at my deposition, prior to this dispute, I had never seen the Yurman pieces at issue in this case. As far as I can tell, the Yurman pieces consist of elements that are common in the industry. Simply put, the use of pave diamonds, gold accents (or gold framing) and silver framing are well known and have been used by various jewelers for many years. I have seen the pieces of jewelry (copies of which are attached to Mr. Azrielant's declaration) on which Yurman now claims to have a trade dress. I had not seen any of these pieces prior to the current dispute. I have never seen any advertisements featuring these pieces. Prior to this dispute, I had never seen the trade dress which Yurman now claims.

15. I showed the Andin Ring that is at dispute here to Sam's Club and Finlay in June 2007. None of the customers indicated that the Andin Ring looked like anyone else's products, including Yurman's.

16. One of my customers, Finlay, first purchased the Andin Ring, and then sought that the ring and the rest of the ensemble switch from a rope design to a quilted

design. At the time, I was told that there were several cable or rope pieces in Finlay's designer case, and it sought a slightly different silver texture.

17. Finlay sells through a variety of retail stores, such as Macy's and Filenes. These stores discount jewelry.

18. Sam's Club is not technically a discounter, as it sells at a single price. However, the price sold at Sam's Club is a discount and is less than the suggested list price by the manufacturer/jeweler.

19. When this dispute arose, I helped compile various examples of advertised jewelry, resulting in examples of certain other jewelry items which used elements similar to those in the Yurman pieces (copies of which are attached to Mr. Azrielant's Declaration).

I declare under penalty of perjury that the foregoing is true and correct.

_____
Marilyn Williams