UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

| | |
|---|---|
| ANDIN INTERNATIONAL, INC., | : |
| Plaintiff, | : |
| -against- | : Civil Action No. 08 cv 1159 (HB) |
| YURMAN STUDIO, INC., | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

| | |
|---|---|
| YURMAN STUDIO, INC., | : |
| Defendant-Counterclaimant, | : |
| -against- | : |
| ANDIN INTERNATIONAL, INC. and VARDI GEM LUSTRE, LLC | : |
| Counterclaim-Crossclaim Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

### PLAINTIFF'S RULE 56.1 STATEMENT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Andin International, Inc., ("Andin") respectfully submits this Rule 56.1 Statement in support of its motion for summary judgment, and states as follows:

1. Andin is a designer, manufacturer and marketer of jewelry and its customers include major retailers throughout the United States. <u>Authority:</u> Azrielant Dec. at ¶ 2.

2. Andin creates approximately 4,000 new jewelry products each year. <u>Authority</u>: Azrielant Dec. at ¶ 2.

3. Defendant Yurman Studio, Inc. ("Yurman") alleges ownership of United States Copyright Registration No. VA 1-024-276, issued August 21, 2000 for a work entitled Pave Collection Enhancer D06384 (hereinafter "the Yurman Enhancer"). <u>Authority</u>: Azrielant Dec. at ¶ 5.

**Facts Related to Andin's Lack of Access to the Yurman Enhancer and
<u>Andin's Independent Creation of the Andin Ring</u>**

4. In 2007, Andin was provided was given a ring by Mr. Moshe Vardi (the "Vardi Ring"). <u>Authority</u>: Azrielant Dec. at ¶ 6 and Ex. B.

5. The Vardi Ring – or one that was substantially similar – was featured in a Mother's Day advertisement from Macy's in 2006. <u>Authority</u>: Azrielant Dec. at ¶ 9 and Ex. C.

6. Ofer Azrielant provided the Vardi Ring to Ramona Azulay and asked her to create a ring inspired by the Vardi Ring. <u>Authority</u>: Azrielant Dec. at ¶ 10; Azulay Dec. at ¶ 5.

7. At the time Mr. Azrielant received the Vardi Ring in early 2007, the Yurman Enhancer was unknown to him, and remained unknown to him until the present dispute started. <u>Authority</u>: Azrielant Dec. at ¶12.

8. Ms. Azulay, who oversaw the design of the new ring (hereinafter the "Andin Ring"), had never seen the Yurman Enhancer prior to this dispute. <u>Authority</u>: Azulay Dec. at ¶¶ 10-11.

9. Andin's salespeople, who were not involved with the creation of Andin's accused products, never came into contact with the Yurman Enhancer. <u>Authority</u>: Williams Dec. at ¶ 14; Lyle Dec. at ¶ 10.

10. Gail Campell, a buyer of jewelry for Sam's Club – one of the largest jewelry retailers in the country – had not seen the Yurman Enhancer prior to the current dispute. <u>Authority:</u> Azrielant Dec. Ex. Z at 87-88.

11. Terry Ghirozi, a buyer for JC Penney – also one of the largest jewelry retailers in the country – had not seen the Yurman Enhancer prior to this dispute. <u>Authority:</u> Azrielant Dec. Ex AA at 79-80.

12. The only jewelry that served as inspiration for Andin's accused products was the Vardi Ring. <u>Authority:</u> Azrielant Dec. at ¶ 10-13; Azulay Dec. at ¶¶ 7, 9.

13. The Yurman Enhancer does not even appear on Yurman's website. <u>Authority:</u> Azrielant Dec. at ¶ 14 and Ex. E.

14. Prior counsel for Andin inspected several known major retailers of Yurman's products throughout the country, and no such piece was found at these locations. <u>Authority:</u> Azrielant Dec. Ex. F at ¶ 7.

15. David Yurman admitted that the Andin Ring does not infringe the copyright in the Yurman Enhancer. <u>Authority:</u> Azrielant Dec. at ¶ 27.

16. The Andin Ring was first shown by Andin to the trade at the JCK jewelry show in Las Vegas, in June 2007. <u>Authority:</u> Azrielant Dec. at ¶ 16; Williams Dec. at ¶ 15.

17. Customers requested that the Andin Ring be offered along with an ensemble, comprised of a pendant (hereinafter the "Andin Pendant") and a pair of earrings (hereinafter the "Andin Earrings"). <u>Authority:</u> Azrielant Dec. at ¶ 17 and Exs. G and H.

18. The Andin Pendant and Andin Earrings were created solely to match the Andin Ring. <u>Authority:</u> Azrielant Dec. at ¶ 17.

**Facts Related to Lack of Substantial Similarity**

19. The Yurman Enhancer consists of a variety of elements, including: (1) a diamond pave rectangular center (which Yurman refers to as a cushion) in a north-south alignment; (2) a stepped, double gold frame surrounding the pave field; (3) a thick single sculpted cable design below and surrounding the gold frame, sculpted in a clockwise direction; (4) a polished silver outer frame; (5) a gold crown at the top of the pendant; (6) a gold crown at the bottom of the bale; and (7) silver piping surrounding a silver sculpted cable bale. <u>Authority:</u> Azrielant Dec. at ¶ 20 and Exs. A and K; Azulay Dec. at ¶ 15.

20. The use of a pave central field is well known. <u>Authority:</u> Azrielant Dec. at ¶ 21 and Ex. L; Azulay Dec. at ¶ 17.

21. There are numerous uses of rounded stones – or as Yurman refers to it, "cushions" – as the central focal point of a piece of jewelry. <u>Authority:</u> Azrielant Dec. at ¶ 22 and Ex. M; Azulay Dec. at ¶ 18.

22. Gold "framing" of a central stone – including pave diamond cushions – is something which has existed long before Yurman. <u>Authority:</u> Azrielant Dec. at ¶ 23 and Ex. N; Azulay Dec. at ¶ 19.

23. Cable jewelry has been used for centuries. <u>Authority:</u> Azrielant Dec. at ¶ 24 and Ex. O; Azulay Dec. at ¶ 20.

24. There are several products on the market today that have some or all of these features. <u>Authority:</u> Azrielant Dec. at ¶ 25 and Ex. P (in particular pages Andin 00620, 623, 625, 629, 631, 634, 636, 639, 642, 645, 649, 652, 655, 658, 661, 664, 670, 676, 685, 686, 687, 689, 690, 694, 695, 698, 705, 708, 710, 713, 716, 722, 726, and 734), and Ex. X; Azulay Dec. at ¶ 21.

25. On January 23, 2008 David Yurman called Ofer Azrielant and complained that the Andin Pendant and the Andin Earrings infringed Yurman's rights in the Yurman Enhancer.  Authority: Azrielant Dec. at ¶ 27.

26. When the conversation turned to the Andin Ring, Mr. Yurman indicated that he did not have an issue with the Andin Ring and stated that the Andin Ring had been included in the cease and desist letters because of an error by Defendant Yurman's in-house counsel.  Authority: Azrielant Dec. at ¶ 27.

27. The Andin Ring does not appear substantially similar to the protectable elements of the Yurman Enhancer or the Yurman Enhancer as a whole.  Authority: Azulay Dec. at ¶¶ 22, 23; Azrielant Dec. at Ex. R.

28. The Andin Earring does not appear substantially similar to the protectable elements of the Yurman Enhancer or the Yurman Enhancer as a whole.  Authority: Azulay Dec. at ¶¶ 24-25; Azrielant Dec. at Ex. S.

29. The Andin Pendant does not appear substantially similar to the protectable elements of the Yurman Enhancer or the Yurman Enhancer as a whole.  Authority: Azulay Dec. at ¶¶ 26-28; Azrielant Dec. at Ex. T.

### Facts Related to Lack of Secondary Meaning

30. Yurman has produced no advertisements that feature its trade dress.

31. The only promotional materials produced by Yurman are catalogues.  Authority: Azrielant Dec. Ex. U.

32. The only promotion produced by Yurman shows the items at issue as products, and does not highlight or otherwise promote its alleged trade dress.  Authority: Azrielant Dec. Ex. U.

33. Yurman's current catalogues do not include the alleged trade dress.  Authority: Azrielant Dec. Ex. V.

34. Yurman's in-store displays do not feature this trade dress.  Authority: Azulay Dec. at ¶ 13.

35. Yurman's employees at its flagship store could not find a copy of the Yurman Enhancer for over thirty minutes – despite being provided with a verbal description – and provided approximately 20 other items based on the description in the complaint. <u>Authority:</u> Azulay Dec. at ¶ 13.

36. Throughout the pendancy of this action, Yurman's web-site has not had any of the pieces covered by the alleged trade dress. <u>Authority:</u> Azrielant Dec. at ¶ 14 and Ex. E.

37. Yurman's current catalogues do not show any items that have the trade dress at issue here. <u>Authority:</u> Azrielant Dec. at Ex. V.

38. Yurman has no consumer studies related to its trade dress. <u>Authority:</u> Azrielant Dec. Ex. Y at 85-87.

39. Yurman has produced no unsolicited media coverage concerning its alleged trade dress.

40. Yurman claims to sell more than 40,000 items in several hundred stores. <u>Authority:</u> Azrielant Dec. Ex. Q at 64; Ex. Y at 89.

41. Yurman has not sold a significant amount of pieces of jewelry featuring its alleged trade dress in the last 10 years. <u>Authority:</u> Caire Aucoin Dec. Ex. A-1.

42. Yurman has sold less than 1,000 <u>total</u> products featuring the alleged trade dress in the last two years. <u>Authority:</u> Caire Aucoin Dec. Ex. A-1.

43. Witnesses have been unable to find items featuring Yurman's alleged trade dress in retail stores, including in Yurman's own retail stores. <u>Authority:</u> Azrielant Dec. at ¶ 15, Ex. F at ¶ 7; Azulay Dec. at ¶¶ 12, 13, 14.

44. Yurman has produced no evidence that any third party has plagiarized the trade dress it claims in this case.

45. There has been a variety of third parties that have used together all of the elements of Yurman's alleged trade dress. <u>Authority:</u> Azrielant Dec. at Exs. P and X.

### Facts Related to Yurman's Inability to Articulate a Trade Dress

46. David Yurman himself believes that the description of the "cushion" element in the alleged trade dress articulated in Yurman's Amended Answer and Counterclaims is incorrect.  <u>Authority</u>:  Azrielant Dec. Ex. Y at 31-33.

47. Yurman cannot provide a precise definition of its "Signature Cable" which is a claimed element of its trade dress.  <u>Authority:</u>  Azrielant Dec. Exs. L, M, N, O, P, Q at 150-54; 208-210; Ex. V (including at pages 8, 13, 15 and 26) and Ex. Y at 103-106.

### Additional Facts Related to No Likelihood of Confusion

*[Note, facts related to the strength of Yurman's trade dress are the same as those in paragraphs 30-45 above; the facts related to the similarity between the trade dress and the accused items are the same as those outlined in paragraphs 19-29 above].*

48. Andin's jewelry sells to mid-market retailers and discounters, which in this case were JC Penney and Sam's Club.  <u>Authority</u>: Azrielant Dec. at ¶¶ 42, 44.)

49. Yurman's jewelry is sold only where luxury brands are sold.  <u>Authority</u>: Azrielant Dec. at ¶ 43; Ex. Q at 48-63 and Ex. Y at 89-95.

50. The consumers that purchase Yurman's jewelry are not the same as the consumers that purchase Andin's jewelry.  <u>Authority</u>: Azrielant Dec. at ¶¶ 39-45; Azulay Dec. at ¶¶ 30-32.

51. Andin has distributed more than 10,000 of the accused items – many of them with the consent of Yurman.  <u>Authority</u>: Azrielant Dec. at ¶ 45.

52. There has been no evidence of confusion between the products distributed by Andin and Yurman.  <u>Authority</u>: Azrielant Dec. at ¶ 45.

53. Andin did not have any knowledge of Yurman's trade dress – nor did a variety of people with significant experience and positions in the industry.  <u>Authority</u>: Azrielant

- 8 -

Dec. at ¶ 12; Ex. Z at 87-88; Ex AA at 79-80; Azulay Dec. at ¶ 10; Lyle Dec. at ¶ 10; Williams Dec. at ¶ 14.

54. Purchasers of jewelry exert significant care when making a purchase. <u>Authority</u>: Azrielant Dec. at ¶¶ 46-51; Azulay Dec. at ¶¶ 29-37.

Respectfully submitted,

**TROUTMAN SANDERS LLP**

**Dated:** June 19, 2008
New York, New York

By: _____
Oren J. Warshavsky  (OW 9469)
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
Telephone: (212) 704.6213
Facsimile: (212) 704-8356
e-mail: Oren.Warshavsky@troutmansanders.com

*Attorneys for Plaintiff Andin International, Inc.*