UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

ANDIN INTERNATIONAL, INC.                    :    Civil Action No. 08 cv 1159 (HB)

           Plaintiff,                                        :

        - against -                                          :

YURMAN STUDIO, INC.                              :

           Defendant.                                     :

                                   :

------------------------------------------------------- x

YURMAN STUDIO, INC.                              :

           Defendant-                                    :
           Counterclaimant,                          :

        - against -                                          :

ANDIN INTERNATIONAL, INC. and          :
VARDI GEM LUSTRE, LLC                        :

           Counterclaim-                                :
           Crossclaim Defendants.                 :

------------------------------------------------------- x

## <u>DECLARATION OF CAROL PENNELLI</u>

      I, Carol Pennelli, pursuant to 28 U.S.C. § 1746, hereby declare the following

under penalty of perjury:

      1.     I am the Executive Vice President of Sales and Marketing for Yurman

Studio, Inc. ("Yurman"). I have been employed by Yurman since 2002. In this position,

I am responsible for preparing advertising and media plans, developing sales strategies

and expanding the sales of Yurman products, training retailers on how to sell Yurman

products most effectively, and developing and approving marketing programs to be used at the retail level. I am intimately familiar with all of the designs that make up the Yurman jewelry design catalog and the manner in which they are sold, marketed, and promoted. I make this declaration in opposition to the motion of Andin International Inc. ("Andin") for summary judgment. I have personal knowledge of the facts set forth below.

2.     Yurman is a world renowned supplier of fine jewelry sold under the DAVID YURMAN brand name. DAVID YURMAN brand jewelry products were first sold in 1979. The company was founded by David Yurman, a trained sculptor, and his wife, Sybil Yurman, an artist. The vision for the company was to utilize David Yurman's artistic skills in the design, manufacture and sale of fine jewelry products. From its inception, Yurman has set new standards for designing and marketing jewelry, infusing the disciplines of art and fashion into the jewelry making process.

3.     From a marketing standpoint, Yurman set out to establish a distinctive brand image akin to the branding paradigm of the clothing and fashion industry. While many jewelry makers are known for the quality of their products, Yurman also sought to be recognized for the distinctiveness of its designs. David Yurman uses gold, silver, diamonds, and other precious metal and colored gemstones in unique and original ways to create original pieces and collections. Much like a fashion designer, Mr. Yurman creates thematic lines or collections of jewelry and timepieces, and introduces new designs or collections four or five times a year. Yurman is well known by consumers and the trade for the quality of its products and the innovation and uniqueness of its jewelry designs.

- 2 -

4.    Yurman also approaches the advertising and promotion of its products from the standpoint of fashion. To promote new designs, Yurman uses well-known models such as Amber Valetta, Naomi Campbell, and Kate Moss, and advertises in traditional fashion and lifestyle media. Over the years, Yurman has become renowned throughout the jewelry industry for its use of innovative advertising techniques and bold advertising campaigns to promote jewelry on a broad basis as fashion items.

### Sales Of The Yurman Pave Products

5.    The five Yurman products at issue in this action that Andin copied -- the copyrighted enhancer (D06384), the medium enhancer (D06390), the large earring (E06305), the small earring (E06597) and the pave Ring (R07000) -- have been extremely successful for Yurman from a sales standpoint. Pictures of these items are attached to the Declaration of David Yurman submitted herewith. Yurman's sales records show that over a period of 10 years, these items alone generated sales of over $11 million at wholesale and $23 million at retail. What is even more remarkable about the sales of these items is that they continued to sell steadily years after they were introduced. While, as is the case with most items, the greatest sales were achieved in the years immediately following their launch, these items remain popular among retailers and consumers, and sales continue at a steady pace. Attached as Exhibit 1 is a chart showing the invoice history for the five products at issue in this action for the calendar year 1998 through early 2008 (at wholesale prices). Attached as Exhibit 2 is a chart showing the names of the retailers across the country who carried each product for the period February 1, 1999 through April 29, 2008, along with the amount sold to each retailer (at wholesale prices).

6.      In addition, I have reviewed the sales data concerning seven additional Yurman items that incorporate the same combination of design elements as the five items identified in paragraph 5. Photographs of these items are attached to the accompanying Declaration of David Yurman. Since their introduction, the seven products have generated another $3 million in wholesale sales and $6 million in retail sales. Attached as Exhibit 3 is a chart showing the names of the retailers who carried each product for the period February 1, 1999 through April 29, 2008 along with the amount sold to each retailer (at wholesale prices). Thus, overall, for the twelve items that incorporate the Yurman trade dress or "look" at issue in this case, Yurman generated nearly **$30 million** in retail sales.

**Promotion Of New Designs**

7.      As is often the case with fashion items, Yurman focuses its promotional efforts primarily on its newest and most current designs. New designs and design collections are generally promoted and advertised heavily for six months to a year after their launch. During that period, they are featured in newspaper and magazine advertisements (both nationally and regionally), in catalogs (by Yurman itself as well as by specialty stores and independent retailers), and on billboards. Although older designs continue to be sold and may appear from time to time in advertising and other promotions, the promotional expenditures dedicated to a particular item or collection is usually scaled back after the launch year, especially where, as is the case of the items involved in this case, the items become a staple in Yurman's line and "sell themselves."

8.      From a review of Yurman's records I was able to determine that the pave ring (R07000), one of the items referred to in paragraph 5 above, which was launched by

Yurman in 2004, was advertised in 13 publications, including NY Observer, Town &

Country, Vogue, Elle, and W, between September 2004 and February 2005. During that

same time period, the ring was featured in Fall 2004 mailers for both Neiman Marcus and

Saks Fifth Avenue, a David Yurman Retail Fall 2004 Mailer, a Spring 2005 Independent

Mailer and a Fall 2005 Independent Mailer. The combined cost for the advertisements

and the mailers for just the ring was approximately $540,000.

9.      In addition, through my review of these records, I was able to determine

that between 2003 and the present, more than $1 million was spent advertising the seven

other Yurman products referred to in paragraph 6 above that share the same unique

combination of design elements as the products at issue in this case. Attached as Exhibit

4 is a chart identifying the advertising vehicles in which particular items appeared since

2003.

10.     Unfortunately, Yurman did not track the advertising vehicles in which

particular designs were featured prior to 2003. Thus, for four items identified in

paragraph 5 above, that were launched before 2003, two enhancers (D06384 and

D06390) and the large earring (E06305) were launched in 1997 and the small earring

(E06597) was launched in 2001, I am unable to identify precisely where advertisements

for the products appeared when they were launched. However, as explained in the

accompanying Declaration of Janet Hayward, these items were heavily promoted at their

first launch. Indeed, in total our records indicate that Yurman spent over $60 million in

advertising from 1999 to 2002 and I estimate that a significant percent of that advertising

spend was directed to the Silver Ice collection, of which these four items were an

important part. Attached as Exhibit 5 is a chart showing advertising history for the years 1999 through 2002.

11.    In addition to traditional print advertising, Yurman or its retailers often will host launch parties or other special events to promote new collections and designs, and press packages will be prepared with an eye towards obtaining editorial media coverage. Because of the phenomenal success of the DAVID YURMAN brand, Yurman products are continuously discussed in editorials, trend, and fashion pages. Examples of editorial media coverage are attached to the accompanying declaration of Janet Hayward.

### Yurman's Approach To Marketing And Sales

12.    Yurman products are currently sold in over 450 retail locations in North America, the Caribbean and Mexico. The products are sold in specialty retail stores and department stores, such as Neiman Marcus, Saks Fifth Avenue, and Nordstrom, in independent retailers throughout the country (from New York, to Iowa, to Dallas), and even in some discount locations such as Neiman Marcus Last Call, Saks Off Fifth and the two David Yurman outlet stores in Florida and Nevada. They are also sold through Finlay Fine Jewelry, an operator of jewelry departments in department stores throughout the United States, including Bloomingdales and Macy's. Yurman also maintains company-owned David Yurman flagship stores and has a substantial online business, which provides access to Yurman products to consumers nationally, even in areas where there are no retail outlets selling Yurman products.

13.    Yurman's products are retail priced as low as $295. While some Yurman customers are people of means who are accustomed to purchasing high-end, luxury designer goods and services, most are not. From my direct experience at the retail level,

Yurman customers vary widely, ranging in age and economic class. They range in age from 13 to 60. They live in big cities in New York and California, and in small towns in Iowa and Wisconsin. While some Yurman customers are extremely discerning and sophisticated in their purchasing decisions, others are less so.

14.    As indicated above, Yurman has emerged as one of the most prominent jewelry advertisers in the United States market. Yurman has revolutionized the jewelry industry by creating highly effective and recognizable lifestyle advertising and promotional campaigns. Yurman spends most of its marketing dollars advertising in the most widely available fashion and lifestyle publications, in national magazines ranging from Oprah and Elle to Vogue, W, and Vanity Fair. It advertises in newspapers such as The New York Times and The International Herald Tribune to reach an international audience, and in regional magazines, newspapers, and billboards to reach a local audience. Yurman also supports its retail partners through a comprehensive direct mail and co-operative advertising programs. These programs penetrate major United States markets through regional magazines, newspapers, billboards, and catalogs. Thus, Yurman's jewelry is marketed not only to sophisticated, fashion-conscious, discerning consumers, but also very heavily to those with lower disposable income and less sophistication. The idea is to reach as many consumers as possible.

15.    I understand that Andin asserts that consumers who purchase Yurman jewelry are primarily high end, sophisticated purchasers who would not purchase jewelry from the stores that sell Andin's jewelry. Andin further claims that the middle-income consumers to which Andin products are sold do not shop in stores in which Yurman

jewelry is sold. Based on my experience in marketing and sales, I categorically disagree with these assertions.

16.     First, as I explained above Yurman markets to consumers of all demographics -- old and young, upper and middle class, fashion conscious and conservative in style. Second, it is simply not true that consumers who shop in Neiman Marcus or Nordstrom do not also shop at Sam's Club or Target or J. C. Penney. Often consumers will shop at high end stores and mid-market or discount stores for all types of products.

17.     Indeed, many discount and mid-market stores as well as QVC and HSN, have begun selling "diffusion lines" of designer items and product lines associated with luxury and affluence, and consumers have come to expect to be able to find such products at a those stores. Similarly, many designers have introduced less expensive product lines to attract middle and lower income consumers. For example, sales of the couture designer Isaac Mizrahi's fashions at Target have been enormously successful and Robert Lee Morris, Judith Ripka, and Anthony Nak have created successful diffusion jewelry lines for QVC and HSN. Thus, a consumer might easily believe that the Andin products being sold at J.C. Penney and Sam's Club are Yurman's entry into the mid-market. Attached as Exhibit 6 are articles describing changes in retail strategies.

18.     I understand that Andin further suggests that because purchasers of jewelry generally exert significant care when purchasing jewelry, once a consumer takes the accused jewelry items out of the case and inspects them, she would immediately know it was not a Yurman piece. First, I do not agree with that. Jewelry consumers buy what they like and what looks good on them. Thus, a less sophisticated consumer who

may be familiar with the Yurman look might see the Andin item in a store circular or physically on display at the point of sale, and believe it is a Yurman piece. Typically, a jewelry purchaser does not turn a jewelry item upside down at the point of sale to see if it stamped with a particular brand name -- rather, she will try the item on, and if she believes the item is a Yurman piece and likes the way it looks on her, she will simply buy the item. Second, even if the purchaser knows at the point of sale that she is buying not buying a Yurman item, others who see her wearing it later may not know this. Yurman jewelry stands for status, and the customer may purchase the item simply because she wants her friends to believe she is wearing David Yurman. Jewelry products are particularly susceptible to this type of post-sale deception, because the brand name is not seen when the jewelry is being worn in public.

Declared under penalty of perjury, this 26 day of June, 2008.

_____
Carol Fennelli

# Exhibits
# Filed Under Seal