UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x

ANDIN INTERNATIONAL, INC.,          :
                                    :
            Plaintiff,              :
                                    :   Civil Action No. 08 cv 1159 (HB)
        -against-                   :
                                    :
YURMAN STUDIO, INC.,                :
                                    :
            Defendant.              :
------------------------------------------------- x
YURMAN STUDIO, INC.,                :
                                    :
            Defendant-              :
            Counterclaimant,        :
                                    :
        -against-                   :
                                    :
ANDIN INTERNATIONAL, INC. and       :
VARDI GEM LUSTRE, LLC               :
                                    :
            Counterclaim-           :
            Crossclaim Defendants.  :
------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM OF LAW SUBMITTED IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

I. <u>Introduction</u>

Steeped in pejorative rhetoric and mischaracterizations of both fact and law, Yurman's opposition attempts to obscure the paradigmatic truths about its alleged rights and its questionable claims of infringement. Nowhere is this more apparent than in Yurman's amorphous, conveniently evolving description of its alleged trade dress. Indeed, Yurman definitively spells out its trade dress in its counterclaim and its Opposition as having three basic elements: (i) an elongated rectangular pave "cushion"; (ii) encircled by a smooth band of gold, providing the appearance of a platform; (iii) encircled by an outside trim of Yurman's signature cable design. Yet, Yurman subsequently asserts that: (i) the elongated rectangular cushion can also be a square (i.e. neither rectangular nor elongated); (ii) the smooth band of gold can be a silver band and can be different shapes; (iii) that "signature" cable is not really signature cable; and (iv) that the cable does not need to encircle the gold band.

Why would Yurman take these contradictory positions? The answer is simple. Yurman's "trade dress" claim is an afterthought – it is a claim that was manufactured for this litigation. As Yurman must admit, it did not include its trade dress claim in the two pre-litigation letters it sent; nor did it include its trade dress claim in its original counterclaim. Rather, as detailed in Andin's opening memorandum, this trade dress claim was raised only after the Court and a leading commentator indicated that Yurman's copyright claim was baseless.

Whether to intentionally mislead or because of carelessness, Yurman's alleged "factual" support consists of mischaracterizations and inadmissible evidence. For instance, Yurman relies on purported discussions between its current counsel and Andin's former counsel. Not only is such evidence hearsay, but it also would disqualify Yurman's counsel (who would now be a witness). Likewise, Yurman continually cites to counsel's "interpretation" of Ofer Azrielant's declaration – urging that Mr. Azrielant conceded "copying" the Vardi Ring when, in fact, the opposite was true – Mr. Azrielant and Ramona Azulay both explained that they did <u>not</u> copy. Similarly, although the evidence is clear that Yurman's customer Finlay Jewelry was the first to purchase Andin's accused ring, Yurman now suggests, without authority, that Finlay took issue

1

with Andin's accused pieces. This is yet another fabrication. Finally, Yurman relies on witnesses proffering mixed factual and opinion testimony – witnesses that were not timely identified as having knowledge or as experts.

At its core, Yurman's Opposition seeks to divert the Court from the very plain facts. There is no copyright infringement here. There is no trade dress infringement here. Yurman does not have a trade dress – both because it is amorphous and because it lacks secondary meaning. Yurman opposes summary judgment with a mixture of conjecture, hearsay, and inadmissible evidence. It cannot do so, and the Court should enter summary judgment forthwith.

## II. Andin Did Not Copy the Vardi Ring or Yurman's Enhancer

Yurman repeatedly urges that Andin "admits [it] copied" the Vardi Ring and/or the Yurman Enhancer. Indeed, the foundation for Yurman's copyright claim and elements of its trade dress claim are built upon this faulty and misleading premise. Mr. Yurman himself testifies to such a concession. *See* Yurman Dec. at ¶ 29. Mr. Ederer proffers similar testimony. *See* Ederer Dec. at ¶ 2. These "admissions" of copying do not exist, but the allegations of their existence emphasizes Yurman's pattern of fabricating allegedly supporting facts where none exist. The word "copy" does not appear in the evidence to which Yurman cites. To the contrary Mr. Azrielant and Ms. Azulay both testified consistently – after seeing the so-called Vardi Ring, Mr. Azrielant determined that, as constituted, it did not fit into Andin's product line and he gave the Vardi Ring to Ramona Azulay, Andin's Director of Merchandising, for inspiration and re-design. *See* Azrielant Moving Dec. at ¶ 10; Azulay Dec. at ¶¶ 5-9. Yurman deposed both Mr. Azrielant and Ms. Azulay, and did not come forward with any contrary evidence. If evidence of "copying" exists, surely Yurman would cite that evidence. Yurman's reliance on manufactured claims as opposed to evidence demonstrates that there is no genuine issue of material facts. Rather, the facts here are clear. Yurman cannot prove copying and, as such, Andin's motion for summary judgment on the issue of copyright infringement must be granted.

### III. Yurman's Jaded Perspective of Its Influence and Popularity

Yurman's position regarding its public perception is inflated. Yurman's Opposition even refers to Mr. Yurman as the "best known jewelry designer of his time." *See* Yurman's Opposition at 2. Again, Yurman provides no support for this allegation. Moreover, as Andin's moving papers point out, Yurman has not conducted a single consumer study regarding the recognition of its brand or any of its jewelry designs. Recent evidence demonstrates why.

On July 2, 2008, JCK, the jewelry industry's leading trade publication and industry authority, published survey results. *See* Azrielant Reply Dec. at ¶ 2. This survey was conducted among individuals that purchased fine jewelry in the past two years. *Id.* at Ex. CC. In response to *aided* questions (i.e. questions asking "Please indicate which of the following designer jewelry brands you have heard of"), Yurman ranked **seventeenth** among jewelers known to the public **and only 21% of all consumers of fine jewelry had ever heard of Yurman**. *Id.* Interestingly, although Yurman and its witnesses all urge that there is no truth to the notion that Yurman is more well known among affluent consumers (i.e. those earning $125,000 or more per year), Yurman was recognized by 39% of these more affluent consumers – almost double then among the survey population. *Id.*

### IV. Yurman Cannot Prove Access

Yurman's argument regarding access is premised on a self-aggrandizing celebration of David Yurman, leading to the conclusory allegation that Andin must have had access to Yurman's designs. Yurman apparently misapprehends both its burden on summary judgment and the salient facts.

To prevail on its claim of copyright infringement, Yurman must establish: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To satisfy the "copying" element of its infringement claim, Yurman "must show both that [its] work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" *Jorgensen v. Epic/Sony*

3

*Records*, 351 F.3d 46, 51 (2d Cir. 2003) (quot. omit). "[C]opying may be established by direct or indirect evidence." *Jorgensen*, 351 F.3d at 51 (quot. omit). "Indirect evidence may include proof of access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001) (quot. omit).

Because Yurman cannot provide any real evidence of access, Yurman cobbles together a claim urging that it can prove *access* by *indirect* evidence. This is a misapplication of the law. As detailed above, Yurman's burden here is to demonstrate *copying*. Yet, Yurman fails to come forward with any indirect proof of copying – that is actual proof of access. Yurman navigates this fatal insufficiency by referring to overall awareness of Yurman. Given that Yurman sells over 40,000 designs through several hundred retail establishments (*see* Azrielant Moving Dec. Ex. Q at 64; Ex. Y at 89), Yurman must do more – it must prove that the individuals tasked with creating the accused products had knowledge of Yurman's copyrighted enhancer.

Tellingly, Yurman has not come forward with any positive evidence of access – rather, it asks that this Court discredit all six witnesses (Ofer Azrielant, Ramona Azulay, Marilyn Williams, Scott Lyle, Gail Campbell and Terry Ghirozi) who all testified that they were unfamiliar with Yurman's copyright enhancer. Yurman deposed all of these witnesses, and could not come forward with an iota of evidence to demonstrate access. Simply put, Yurman cannot come forward with any evidence demonstrating that Ms. Azulay (who created the accused products) or anyone else affiliated with Andin's accused products had access to the copyrighted enhancer. This failure demonstrates that Yurman will be unable to produce any positive evidence at trial. As such, given that Yurman's evidence is based solely on conjecture, there is no genuine issue of material fact, and Andin's motion must be granted.

### V.   Yurman has Failed to Articulate A Trade Dress

Because Yurman's trade dress was manufactured as an afterthought for purposes of this litigation, the definition of that trade dress has been subject to continued "revisions" by Yurman. These revisions are necessitated by two competing concerns: (1) Yurman's desire to craft a trade

dress that covers Andin's products in the wake of the Court's initial opinion about Yurman's copyright claim; and (ii) fitting into that trade dress a wide enough range of products in the hope of rendering that trade dress protectable. Yurman's amended counterclaim urges that the trade dress consists of (i) an elongated rectangular pave "cushion"; (ii) encircled by a smooth band of gold, providing the appearance of a platform; (iii) encircled by an outside trim of Yurman's signature cable design. *See* Yurman's First Amended Counterclaim at ¶ 69. While Yurman's opposition recites this definition as well, it does not stick to this definition.

In discussing sales success and advertising, Yurman relies on the alleged sales and advertising of items not included in its trade dress. Further, Yurman suggests an affiliation of the alleged trade dress with two of its product lines – the so called Albion collection and the so-called Silver Ice Collection. Not a single item in those collections meets the elements of the alleged trade dress. *See* Azrielant Moving Dec. Ex. E.

Not only do the commercial realities of what Yurman is actually selling interfere with Yurman's putative trade dress, but also Yurman's products do not fall within its trade dress. First and foremost, as pointed out in Andin's moving papers, and as Yurman does not dispute, the Yurman ring has a silver band (instead of a gold frame) surrounding the elongated rectangular pave cushion. Thus, Yurman tacitly admits that the second element of its trade dress is not present in all of its trade dress items.

The first element of Yurman's trade dress – a rectangular elongated cushion, is not present in all of the items submitted by Yurman. *See e.g.* Yurman Dec. Ex. 3 at designs D06741, R06740 and E06741. Further, as Yurman does not dispute, at his deposition, David Yurman stated that the trade dress really should include a square element. It does not take a jury to determine that a "square" is not "elongated." No reasonable juror could find that the first element of Yurman's trade dress is both an elongated rectangle and a square.

The second element of Yurman's alleged trade dress – the smooth band of gold – is meaningless when viewed in the context of the different items it now claims. In the copyrighted pendant (i.e. the item on which Yurman originally brought its claim), the gold frame appears like

a tube with a thin step. *See* Yurman Dec. Ex. 2 at E06597. In all of the other items which Yurman now alleges are subject to its trade dress, the gold frame is a thick "L" shape with two clearly distinct surfaces. *See* Yurman Dec. at Exs. 2 and 3. Once again, the inconsistency of Yurman's second element demonstrates that its trade dress lacks definition and is thus unprotectable.

What is the third element of Yurman's trade dress? Yurman suggests that David Yurman was somehow confused or tricked during his deposition. First, it should be noted that it is hornbook law that Mr. Yurman cannot try to create a genuine issue of material fact by contradicting his own deposition testimony. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987); *Middleton v. Metro. College*, 545 F. Supp. 2d 369, 370 n.1 (S.D.N.Y. 2008). As such, Mr. Yurman's declaration in this regard should be ignored. Nonetheless, it was first Janet Hayward who stated that Yurman's "signature" cable includes every single cable that David Yurman designs. *See* Azrielant Moving Dec. Ex. Q. at 150-54 and 208-10. This includes a variety of different cables. *See, e.g.*, various cable designs at *id.* at Exs. V and U.

But there also is a far more important point here. In many of the items which Yurman alleges are subject to its trade dress, there is no cable seen – and it is certainly not an encircling element. *See* Yurman Dec. Ex. 2 at design R07000; Yurman Dec. Ex. 3. In the pieces in Exhibit 3 where there appears to be cable, the cable is not visible from the front, and therefore, not encircling the gold band. *Id.* at Ex. 3.

Given the foregoing inconsistencies, it comes as no surprise that in response to Andin's papers (and after the close of discovery), Yurman premiers a new trade dress (*see* Yurman's Opposition at 1); one which does not include an "elongated" or "rectangular" shape and disposes of Yurman's "signature" cable in favor of just any cable. Deciphering Yurman's ever changing trade dress is, at this point, an impossible task and, as such its claim should be dismissed as a matter of law.

6

## VI. The Declarations of Pennelli and Newberg Should be Ignored

Yurman, for the first time in its Opposition, introduced two individuals with allegedly discoverable information, both of whom submitted declarations in opposition to Andin's motion. However, these individuals, Carol Pennelli and Sue Ann Newberg, were not disclosed in Yurman's Rule 26 Initial Disclosures, nor in Yurman's Supplement to their Initial Disclosures. At the close of discovery, Yurman indicated that it might produce one of these two witnesses, and then refused to do so prior to the due date for Andin's motion.

Fed. R. Civ. P. 37(c)(1) states that "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion ... unless the failure was substantially justified or is harmless." Yurman's failure to disclose Pennelli and Newberg is neither substantially justified nor harmless. The purpose of Rule 37(c)(1)'s preclusionary provision is "to prevent the practice of "sandbagging" an opposing party with new evidence." *Fleming v. Verizon New York, Inc.*, 2006 U.S. Dist. LEXIS 68632, *22 (S.D.N.Y. Sept. 25, 2006). Yet, as with its new definition of trade dress, "sandbagging" is exactly what the presentation of these two witnesses at this late date amounts to.

After discovery closed, Yurman offered Pennelli for a deposition; however, she was only offered as an alternative witness after Yurman failed to produce Paul Blum (who was included in Yurman's Rule 26 disclosures, was noticed for a deposition and did not attend on the date noticed and then Yurman refused to produce him). Further, the date Yurman offered for Pennelli's deposition was June 20 – the day *after* Andin's summary judgment motion was due. *See* Aucoin Reply Dec. at Exs. A and B. This was insufficient notice to Andin that Pennelli and Newberg were individuals with relevant information and, in any event, Yurman refused to produce either prior to the due date for Andin's motion for summary judgment.[1] *See e.g. Pal v.*

---

[1] Perhaps if Yurman had produced communications or a privilege log, as Andin requested but Yurman never did, these particular individuals and their knowledge concerning these matters would have been discovered prior to Yurman filing its Opposition to Andin's motion for summary judgment.

7

*NYU*, 2008 U.S. Dist. LEXIS 50902, *13 (S.D.N.Y. June 30, 2008); *FDIC v. Wrapwell Corp.*, 2000 U.S. Dist. LEXIS 15393, *5 (S.D.N.Y. Oct. 23, 2000).

Andin is prejudiced and harmed by Yurman's use of these declarations. First, Andin prepared its motion for summary judgment in reliance upon what it believed to be the entire universe of documentary and testamentary evidence gathered during the discovery phase. *See e.g., FDIC*, 2000 U.S. Dist. LEXIS 15393, *6. Discovery closed on June 6, 2008, and Andin is entitled to rely on the information that was produced prior to that time, or at the very least prior to the deadline for Andin to file its motion for summary judgment. *See e.g. Fleming*, 2006 U.S. Dist. LEXIS 68632, *25. Making matters more troubling is the fact that both Pennelli and Newberg cite to new, unclear evidence. For example, Newberg makes the general self-serving assertion that "Based on my experience at Saks dealing directly with sales people and consumers, the many Saks jewelry customers familiar with the David Yurman brand would immediately recognize this unique combination of design elements as a distinct David Yurman look and believe that jewelry items with that combination of features come from David Yurman." (Newberg Decl. ¶ 10)

Andin is prejudiced by the fact that it can neither depose Newberg or inquire as to her experience by taking third party discovery of Saks, if necessary. Further, this testimony really falls within the provence of an expert – one that has not been disclosed and for whom no report was provided. Similarly, Pennelli makes statements concerning the wholesale and retail sales of the Yurman pieces at issue (Pennelli Decl. ¶ 5), costs of advertising (Pennelli Decl. ¶¶ 8 and 10), her interpretation of unidentified and unproduced Yurman documents (Pennelli Decl. ¶ 9), and about "diffusion lines" of designer items (Pennelli Decl. ¶ 17). These are all areas on which Andin would have been allowed to take discovery, but on which Andin has now been deprived.

Yurman offers *no* explanation for why Pennelli and Newberg were not previously identified. Andin is prejudiced if Pennelli and Newberg's declarations are considered, as it prepared its case and the current motion while being deprived of full discovery. Accordingly, these declarations should be precluded.

## VII. <u>Yurman's Trade Dress has not Attained Secondary Meaning</u>

Yurman's claim of secondary meaning falls short. Yurman alleges that it has spent significant sums advertising the alleged trade dress and that the alleged trade dress has received media coverage. Yet, *Yurman has not produced a single advertisement!* Yurman relies on product catalogues that do not highlight the products at issue. Yet, it is hornbook law that advertisements and media coverage are only relevant here to the extent they feature the trade dress at issue in this case. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 167 (2d Cir. 2007). Yurman has not made such a showing.

Similarly, that Yurman now ties its advertising and sales success to items in the Silver Ice collection (Azrielant Moving Dec. Ex. E) and jewelry that does not fall within the trade dress defined in Yurman's amended answer and counterclaim (Yurman Dec. Ex. 3). As such, Yurman's evidence of sales success and advertising is equally meaningless here.

Yurman's allegations about its length and exclusivity of use are diversionary. Yurman urges that the various companies employing similar trade dresses came only after Yurman. Yurman shows no evidence of this and, more important, shows no evidence that it did anything to prevent this usage for quite some time prior to Andin's use of similar design elements. Yurman also makes the unsubstantiated argument that Vardi and these third parties copied Yurman's products. Yet, Yurman has not obtained a single judgment despite the prevalent use of these elements. Further, Yurman has come forward with no evidence that Mr. Vardi or anyone else copied Yurman's products. Indeed, despite the fact that the Vardi Ring was on the market for at least two years – sold and extensively advertised by Yurman's customer Finlay – Yurman failed to take any action. Although Yurman relies on discussions with Andin's prior counsel to demonstrate that, somehow, a negative inference should be drawn against Andin, Yurman ignores the fact that at Mr. Azrielant's deposition, Mr. Azrielant's provided Yurman's counsel with Mr. Vardi's cell phone number (*see* Azrielant Reply Dec. at ¶ 4) and, to date, Yurman has not acted on that information.

The truth here is inescapable. Yurman cannot prove copying. Yurman cannot tie its sales, advertising or media coverage to the trade dress here. As such, Yurman cannot demonstrate secondary meaning.

### VIII. Yurman has not Produced Evidence of Actual Confusion

Yurman alleges that two customers – Finlay Fine Jewelers and JC Penney – were confused by Andin's products. Finlay – a customer of Yurman – was the first purchaser of the Andin ring. Yurman provides no basis for assuming that its customer would purchase Andin's product if it found that such product would be confused with Yurman's alleged trade dress. Further, all existing evidence demonstrates that there was no confusion. *See* Williams Dec. at ¶¶ 16-17; Ederer Dec. at Ex. 9.

Finally, Yurman relies on an e-mail from Beryl Raff for proof of confusion. *See* Ederer Dec. at Ex. 22. This post-litigation e-mail is hearsay and merely suggests that Ms. Raff was unhappy about being involved in litigation with Yurman, with whom she had a legal controversy in the past. Tellingly, Yurman did not depose Ms. Raff. Further, Ms. Terry Ghirozi of JC Penney, who <u>was</u> deposed by Yurman, refuted Yurman's claim of confusion. *See* Azrielant Moving Dec. Ex. AA at 79-80.

### IX. Conclusion

For all the reasons set forth in this memorandum, Andin respectfully requests that this Court grant its motion for summary judgment.

Respectfully submitted,

**Dated:**  July 10, 2008  
New York, New York

By: _____  
Oren J. Warshavsky (OW 9469)  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4624  
Facsimile: (212) 589-4201  
e-mail: owarshavsky@bakerlaw.com

*Attorneys for Plaintiff*